MARTHA W. CLAWSON

*v.*

JOSEPH K. RILEY et al., executors of Isaiah D. Clawson, deceased.

C. was the administrator of his wife's father, sole acting executor of her brother and sole executor of her mother, and complainant (C.'s wife) had an interest in each of those estates. On bill filed after her husband's death, against his executors to recover her several unpaid shares—*Held,*

(1) That they must account for the principal and interest of securities, standing in C.'s name, which were taken by the complainant as part of her father's estate, and which C., instead of assigning to her, caused them to be assigned to himself.

(2) That complainant's receipts for payments on account of her shares, given to C. at different times, are conclusive as against her unsupported testimony, if it were competent (but, under the circumstances, it is not), denying the several payments, because they show that, if the payments were never in fact made, she voluntarily discharged C. therefrom.

(3) That complainant's testimony is not competent to disprove allegations in the answer, where the answer itself, although in one sense responsive, is not evidence; nor can she, under *P. L. of 1880 p. 52*, testify as to transactions with her husband, either by general or detailed statements.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. E. Dudley, Mr. T. H. Dudley,* and *Mr. Bradbury Bedell,* of Philadelphia, for complainant.

*Mr. E. S. Fogg* and *Mr. M. P. Grey,* for defendants.

THE CHANCELLOR.

This suit is brought by the widow of Dr. Isaiah D. Clawson, late of Salem county, against his executors, to recover securities and money belonging to her, which, she alleges, he received during the marriage. The property in question was her distributive share of the estate of her late father, William J. Shinn; residuary legacies given to her by the wills of her brother, Samuel S. Shinn, and her mother, Margaret C. Shinn, and the money, principal and interest, due on a bond given to her by her father. Dr. Clawson was sole administrator of her father's estate; sole acting executor of her brother's will, and sole executor of the will of her mother. The complainant was married to Dr. Clawson, December 13th, 1850. He died October 8th, 1879. Her father died February 10th, 1868; her brother Samuel, January 17th, 1869, and her mother, December 13th, 1869. Letters of administration on her father's estate were granted to Dr. Clawson, by the surrogate of Salem county, February 15th, 1868. The inventory of the estate amounted to $86,102.11, and the administrator, subsequently to the filing of the inventory, received property of the estate not inventoried, amounting to $2,870.86. So that the estate which came to his hands, and for which he was accountable, amounted to $88,972.97. The complainant's distributive share was, according to the bill, $12,446.17. In addition to this there were due her from the estate $4,871.66, for principal and interest on a bond for $4,000 and interest, given to her by her father, and held by her at his death. In his account of his administration, Dr. Clawson credits himself with $11,-700.46 as paid to her for the distributive share, and $4,871.66 as paid to her for the principal and interest of the bond. The complainant in her bill alleges that, according to his accounts, $4,108.63 of that estate were never distributed or accounted for in any way. By the will of her brother Samuel, the residue of his estate was given to his next of kin, who were his mother, his sisters, Emeline W. Shinn and the complainant, and the two children, Emeline S. and Charles H. Reed, of his deceased sister, Mary W. Reed. Dr. Clawson, as his executor, was chargeable with the inventory, $11,173 and $1,318.03 for property after-

wards received, altogether $12,491.03. The residue was $6,-
264.34, the complainant's share of which was $1,566.08. By
her mother's will, the residue of the estate of the latter was to be
divided into three parts, one of which was given to the complain-
ant. The inventory of that estate amounted to $29,248.01, and
Dr. Clawson, the executor, received other property, not inven-
toried, to the amount of $3,203.12, altogether $32,451.13. The
residue amounted to $28,483.25, the complainant's share of which
was $9,494.41. Dr. Clawson left a large estate. The inventory
of his personal property amounted to $98,748.36; and his real
estate was valued at not less than $25,000. By his will he gave
his widow his household, goods and bequeathed certain legacies,
amounting in all to $12,800, and then gave to his widow the use
of all the residue of his property for life, with remainder to their
son, who is still living. The complainant admits that she has
received on account of the moneys coming to her from the three
estates in question $8,070.75, but alleges that she has never re-
ceived anything more on account of the distributive share, lega-
cies and bond above mentioned. The $8,070.75 are the amount
of certain bank, railroad and turnpike stocks in her name, found
in Dr. Clawson's iron safe after his death. For some, the greater
part of those moneys, however (except what she claims is due
her for her share of the $4,108.63 of her father's estate, which
she insists has never been distributed or accounted for), Dr.
Clawson held receipts drawn by him and signed by her. All
of those receipts, except three, and those are for moneys due her
from her mother's estate, simply acknowledge the receipt of the
money mentioned thereon, stating the account on which it was
received. Those three receipts show how the money therein
mentioned was paid. One is for $13 for a set of harness and a
horse blanket taken at the appraisement; another is for $2,900,
part of complainant's residuary legacy under her mother's will,
and contains this memorandum, " 50 s. L. V. R. R.," evidently
signifying that the payment was with fifty shares of stock of the
Lehigh Valley Railroad Company. The third is for $4,190.55
on the same account, with a memorandum showing (it also appears
otherwise) that it was paid by the transfer of a bond and mort-

Clawson v. Riley.

gage for $4,000, given by Henry C. Summerill to William J. Shinn. Apart from the receipts there is no evidence that the money mentioned in them was received by the complainant. Dr. Clawson was a very methodical, careful and painstaking man of business. From his books the mode in which he made the payments of the moneys receipted for to others than the complainant, can readily be traced. In his account contained in his book of his transactions in settling the estate of William J. Shinn, he states in a memorandum how the respective shares of Emeline W. Shinn and the Reed children were paid; but though he sets down the amounts mentioned in the various receipts signed by the complainant, he does not say how they were paid, nor that they were, in fact, paid at all. With regard to Samuel S. Shinn's estate he held no receipt of the complainant except one for $20, which appears to have been the appraised value of some article or articles in the inventory taken by her. As to the rest of her legacy (according to his book, $1,546.08), there is not only no evidence that he ever paid it, but, from the entries in his book, it is quite clear that he never did. Of the amount receipted for on account of the legacy given to her by her mother's will, $4,-190.55 appear, as before mentioned, to have been paid by the Summerill mortgage, which originally belonged to her father's estate. Dr. Clawson, as administrator of that estate, assigned it to the widow on account of her distributive share. At the death of the latter it constituted part of her estate, and it was assigned by him as her executor, on the 30th of November, 1870 (the date of the before-mentioned receipt given him by the complainant for $4,190.55), to Isaac Scull, without consideration, and merely in order that the latter might re-assign it to him, which he did on the next day, without consideration, and Dr. Clawson received the interest upon it from that time until his death, and he then still held the mortgage. There is reason to believe, and ground for adjudging, that Dr. Clawson held this mortgage in trust for the complainant. He appears to have given it to her, and she received it on account of her legacy under her mother's will. Instead of assigning it to her, he caused it to be assigned to himself. The assignments from himself to Scull, and from

the latter to him, are proved to have been entirely without consideration. Under the circumstances it will be presumed that Dr. Clawson held the mortgage in trust for the complainant.

But the like presumption is not raised as to any other of the mortgages mentioned in the bill, and which he caused to be assigned to himself. He was chargeable with them as part of the inventory, and answered for the amount in his accounts. The English mortgage, it may be observed, belonged to the estate of Samuel S. Shinn, and in making up the amount of the residuary legacies Dr. Clawson charges himself with it. As before stated, the complainant's legacy, under her brother's will, has not been paid to her. She has received only $20 on account of it. Dr. Clawson's estate should be charged with the entire balance of her legacy, and she therefore can have no claim to that mortgage. As to the other mortgages, as before suggested, the presumption is that they were his own property, for he duly accounted for them.

But it is urged on her behalf that she herself testifies that she has never received any of the moneys for which she gave the receipts to her husband. Her testimony on that head, however, is objected to as incompetent. Her counsel insist that it is competent under the sixth section of the act concerning evidence (*Rev. 379*), inasmuch as the answer "charges" that she received the money in question, and this they insist is responsive to the bill. That section provides that the complainant or petitioner in any action or proceeding of an equitable nature, in any court, shall be a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations contained in the bill of complaint or petition. But clearly the complainant in this case is not made competent by that section. The intention of the legislature, in the provision just quoted, is easily discernible. It is to render the complainant competent to testify in rebuttal of so much of the answer as will be evidence against him. But the statements which it is claimed render the complainant in this case competent to testify, are not evidence. They are merely expressions of belief on the part of the defendants that the complainant received the moneys, and

Clawson v. Riley.

" charges " that such is the fact; while in the same answer the defendants expressly deny that they have any knowledge or information on the subject, except from the allegations of the bill and the accounts rendered by their testator of the respective estates in the orphans court.    Obviously, such an answer is not evidence, though it is in a sense responsive; that is, a reply to the allegation of the bill to which it is directed and relates. *Pellatt* v. *Ferrers, 2 Bos. & Pul. 542 ; Gres. Eq. Ev. 430, n. a.* A " charge " has no place in an answer.    It is appropriate to a bill alone.  It is an allegation of matters which disprove or avoid a defence which it is alleged the defendant is supposed to pretend or intend to set up. *Story's Eq. Pl.* § *31.*    In the answer under consideration the " charge " is merely equivalent to, and, manifestly, was intended as, a protestation.

By the act of 1880 (*P. L. of 1880 p. 52*), the complainant is rendered competent to testify, notwithstanding the fact that the defendants are sued in a representative capacity, except as to any transaction with, or statement by, her husband.    Her testimony on the subject of the receipts that she never in fact received the money, the receipt of which she thereby acknowledges, is incompetent; for it is of a transaction with her husband.    And so, too, of her testimony as to the fact that she never received any of the moneys (with certain exceptions) coming to her from the estates of her father, mother and brother, for it involves the same transactions with her husband, and such testimony is merely a general statement of the same matters which she is prohibited from testifying to in detail. As she is incompetent to testify that she did not receive the moneys mentioned in the particular receipts, she is equally so to testify that she received none of the moneys mentioned in any or all of them.  The complainant is entitled to the Summerill mortgage and an account of the interest collected thereon by Dr. Clawson.    Under the circumstances it will be adjudged that he received and held it for her as her trustee. *Vreeland* v. *Vreeland, 1 C. E. Gr. 512; Horner* v. *Webster, 4 Vr. 387.*    She is also entitled to the amount of her legacy under her brother Samuel's will (less $20 which she appears to have received), with interest

never been paid to her. Dr. Clawson settled his account of that thereon from the time when it was payable to her. That has estate in 1870, and appears to have retained her legacy (except the $20) in his hands up to the time of his death. As to the rest of the moneys in question, there is evidence, by her receipts, that they were paid to her, and that she discharged her husband from them. It is enough to say that there is no evidence that he retained them and did not pay them to her; but it may be added that, if there were, there is no evidence that he retained or received them under such circumstances as would make him or his estate accountable to her. Though there is no evidence from his books, apart from the receipts, that he actually paid the moneys to her, the receipts are evidence of it, and they are not contradicted. The conclusion from them is, that if the moneys were not in fact paid, she voluntarily discharged him from liability to her for them. There will be a decree in accordance with the views above expressed. The complainant is entitled to costs, payable out of Dr. Clawson's estate.